

**NUMBER 13-08-00594-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**JOSE MIGUEL VASQUEZ JR.,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 107th District Court
of Cameron County, Texas.**

# MEMORANDUM OPINION

**Before Justices Yañez, Garza, and Benavides
Memorandum Opinion by Justice Yañez**

A jury found appellant, Jose Miguel Vasquez Jr., guilty of murder, and the trial court

sentenced him to life imprisonment.[1] Appealing pro se,[2] appellant contends, by five issues,

---

[1] *See* TEX. PENAL CODE ANN. § 19.02(b), (c) (Vernon 2003), § 12.32 (Vernon Supp. 2010).

[2] On January 8, 2009, this Court abated this appeal and instructed the trial court to determine whether appellant: (1) desired to prosecute his appeal; (2) had been denied effective assistance of counsel; and (3) was indigent and entitled to court-appointed counsel. On February 12, 2009, the trial court held a hearing. At the hearing, appellant asserted that his trial counsel had rendered ineffective assistance and advised the court that he wished to proceed with his appeal pro se. Appellant specifically rejected the assistance of court-

that: (1) the trial court erred in admitting DNA evidence against him because the State failed to establish the reliability of the procedures used to test the DNA evidence;[3] (2) the State engaged in "prosecutorial misconduct" by refusing to release DNA evidence to the defense's expert for re-testing; (3) the State's failure to release DNA evidence for re-testing constituted a *Brady* violation;[4] (4) his trial counsel rendered ineffective assistance; and (5) the reporter's record is incomplete because it fails to include some matters that appellant "clearly recalls" from trial. We affirm.

## I. Background

At trial, the State presented the testimony of Ana Ayala and Andres Garcia, among others. Ayala testified that on the evening of May 15, 2006, she was "getting high" on crack cocaine with appellant, George Garza (the murder victim), and several others at the home of Pablo Cortez. While at Cortez's home, Ayala heard appellant tell Garza that he (appellant) would kill Garza in less than two hours. Shortly thereafter, Ayala, Garza, and appellant went to Garcia's house. Garcia, in his own vehicle, drove Garza to a local park. Appellant and Ayala followed, with Ayala driving Garza's truck. When they arrived at the park, appellant instructed Ayala to wait; he drove away with Garza and Garcia. A short while later, only Garcia and appellant returned. According to Ayala, appellant was covered in blood. Appellant showed her Garza's knife (which he had borrowed earlier in the evening), licked the knife, and told Ayala that he had killed Garza with his own weapon. Ayala and appellant then drove to Garcia's house. Ayala waited in the car while appellant

appointed counsel. The trial court declined to make any finding regarding appellant's claims of ineffective assistance because of appellant's intent to raise such issues on appeal. The trial court granted appellant's request to proceed pro se and ordered that he be provided with a free copy of the record.

[3] In a sub-issue, appellant also complains that the State failed to release DNA samples to the defense's DNA expert for re-testing. We note that this sub-issue is also raised in appellant's second issue.

[4] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).

2

removed his bloody clothing and gave it to Garcia's father. Appellant rinsed off with a hose and put on clean clothes. Ayala and appellant then went to eat at a coffee shop. Later that day, appellant and Ayala rented a room at a motel. They left the motel in a friend's car to obtain some drugs. Appellant sat in the back seat behind the driver's seat. According to a police officer's testimony, the murder weapon was later recovered from beneath the vehicle's cushion where appellant was seated.

Garcia testified that appellant asked him to drive appellant and Garza into the park. Garcia testified that, at the park, Garza and appellant were outside the vehicle arguing. He saw appellant "hitting" Garza with both hands. Appellant returned to the car, leaving Garza behind. Appellant was breathing fast and told Garcia to take him back to the truck.

## II. Discussion

By his first issue, appellant complains that: (1) the State failed to release DNA evidence to the defense for re-testing; and (2) the State's DNA evidence was "inadmissible" because the State "failed to establish the general acceptance or inherent rationality of the process" of its DNA-testing procedures, which resulted in a finding that DNA on the murder weapon was consistent with appellant's DNA. The State responds that: (1) testimony by the defense's DNA expert, Aliece Watts, established that the State did, in fact, release DNA evidence to the defense for further testing; (2) Watts testified that she generally accepted the methodology of the State's expert; and (3) the defense did not preserve any challenge to the State's DNA-testing procedures because it did not object to the admission of the State's DNA evidence.

Watts testified that, although the State did provide DNA evidence to a defense-designated laboratory for additional testing, no additional testing was done because of a "communications breakdown." Watts also testified that appellant could not be excluded

3

as a contributor to the DNA that was found on the murder weapon. We disagree with appellant's assertion that the State failed to establish the reliability of its DNA-testing procedures. The State's DNA expert, Dr. Laura Gahn, testified that she was the laboratory director at Identigene, the laboratory where the State's DNA testing was conducted in this case. Dr. Gahn described the testing methods used on the evidence samples and the reference samples in this case. As the State notes, the defense did not object at trial to the DNA-testing procedures utilized by the State's expert.[5] Dr. Gahn testified that the "major contributor" to the DNA found on the knife was Garza, the victim. According to Dr. Gahn, additional DNA was found on the knife from a "lower level contributor"; this DNA is consistent with appellant's DNA.

We hold that: (1) the State did release DNA evidence to the defense for re-testing; and (2) the defense failed to preserve any challenge to the reliability of the State's DNA-testing procedures by failing to object on that basis.[6] We overrule appellant's first issue.

By his second issue, appellant contends that the State engaged in "prosecutorial misconduct" by failing to release DNA evidence to the defense for re-testing. As noted, the record shows that the State did release the DNA evidence to the defense-designated laboratory for re-testing. Accordingly, we overrule appellant's second issue.

---

[5] Appellant's counsel objected to the State's evidence only on the basis of "hearsay"; the objection was overruled. The State elicited testimony from Dr. Gahn that her "statistics and analysis" were based on "[a]ccepted scientific method" and that her laboratory had the proper accreditation and certification. Appellant's counsel did not object to this testimony.

[6] See TEX. R. APP. P. 33.1; TEX. R. EVID. 103; *Martinez v. State*, 91 S.W.3d 331, 335 (Tex. Crim. App. 2002) (stating, under Texas Rule of Appellate Procedure 33.1 and Texas Rule of Evidence 103, "the party complaining on appeal . . . about a trial court's admission, exclusion, or suppression of evidence, 'must, at the earliest opportunity, have done everything possible to bring to the judge's attention the evidence rule or statute in question and its precise and proper application to the evidence in question.'"); *see also Whatley v. State*, No. 13-07-568-CR, 2009 Tex. App. LEXIS 556, at **24-25 (Tex. App.–Corpus Christi Jan. 29, 2009, pet. ref'd) (mem. op., not designated for publication) (noting that "[t]he court of criminal appeals has 'consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence. This is true even though the error may concern a constitutional right of the defendant.'" (quoting *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002))).

By his third issue, appellant complains that the State's failure "to turn over DNA discovery evidence to the defense constituted a *Brady* violation on the part of the State."[7] Again, the State *did* turn over DNA evidence to the defense for re-testing. Thus, appellant's contention is not supported by the record, and we overrule his third issue.

By his fourth issue, appellant contends that his trial counsel was ineffective because, even though the State refused to release the DNA samples for re-testing, his counsel "abandoned attack of the DNA evidence used to convict the appellant knowing the evidence was questionable." In sub-issues, appellant contends his counsel was ineffective for: (1) failing to request a stay in the trial proceedings until questions regarding the DNA evidence were resolved; and (2) failing to object to the State's suggestion that appellant was a member of a gang and was motivated by gang activity.

Ineffective assistance of counsel claims are evaluated under the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*.[8] The *Strickland* test requires the appellant to show that counsel's performance was deficient, or in other words, that counsel's assistance fell below an objective standard of reasonableness.[9] Assuming appellant has demonstrated deficient assistance, he must then show that there is a reasonable probability that, but for counsel's errors, the result would have been different.[10] In determining the validity of appellant's claim of ineffective assistance of counsel, "any judicial review must be highly deferential to trial counsel and

---

[7] *See Brady*, 373 U.S. at 87.

[8] *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

[9] *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 687.

[10] *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694.

5

avoid the deleterious effects of hindsight."[11]

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence.[12] Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy.[13] A reviewing court will not second-guess legitimate tactical decisions made by trial counsel.[14] Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions.[15]

An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.[16] Here, the record is silent regarding trial counsel's reasons for failing to: (1) pursue a strategy of attacking the State's DNA evidence; (2) request a stay in the trial proceedings until resolution of issues regarding the DNA evidence; and (3) object to the State's suggestion that appellant belonged to a gang and was motivated by gang activity. Appellant has not overcome the strong presumption that counsel's conduct fell within the wide range of reasonable

---

[11] *Thompson*, 9 S.W.3d at 813.

[12] *Id.*

[13] *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.).

[14] *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate 'unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.'").

[15] *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851.

[16] *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814 (setting out that "in the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*"); *see Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc) (stating that "we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment" and that "[d]ue to the lack of evidence in the record concerning trial counsel's reasons" for the alleged ineffectiveness, the court was "unable to conclude that appellant's trial counsel's performance was deficient.") (internal citations omitted).

professional assistance and that his actions could be considered sound trial strategy.[17] Furthermore, appellant does not contend with proper citation to authority and a clear and concise argument that there is a reasonable probability that but for trial counsel's alleged errors, the result would have been different.[18] Therefore, appellant has not met his burden to prove ineffective assistance of counsel by a preponderance of the evidence.[19] We overrule appellant's fourth issue.

By his fifth issue, appellant contends that the reporter's record is neither accurate nor complete. Specifically, appellant contends that volumes 12 and 16 of the reporter's record are incomplete because he recalls that his counsel advised the trial court that the State had not released DNA samples to the defense's DNA expert. According to appellant, this exchange is not included in the reporter's record, and the record is therefore incomplete.

Volume 12 of the reporter's record comprises a transcript of a pre-trial hearing, held on April 10, 2008, approximately four months before trial. At the hearing, the trial court granted defense counsel's motion for a continuance to postpone trial until after the defense was given an opportunity to conduct its own testing of the DNA evidence.

Volume 16 of the reporter's record reflects a pre-trial hearing on the State's motion for the defense to produce documents. The hearing took place on August 6, 2008, six days before the beginning of trial. At the hearing, the State complained that it had turned over DNA samples and other evidence, including the knife, to the defense-designated

---

[17] *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851.

[18] *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694; *see also* TEX. R. APP. P. 38.1(i). Appellant asserts, without argument or citation to the record, only this sentence: "Trial records show the deficient performance of appellant[']s attorney and but for counsel[']s errors[, the] probability exist[s] that the ultimate result would have been different."

[19] *Thompson*, 9 S.W.3d at 813.

7

laboratory, and the evidence had still not been returned. Moreover, the State complained that defense counsel had not provided any documents or reports from the defense-designated laboratory regarding DNA testing. Defense counsel explained that there were no documents or reports pertaining to DNA testing because the defense-designated laboratory had not conducted any DNA testing. Defense counsel advised the court that the defense-designated laboratory did not conduct any DNA testing of the evidence because the laboratory had recently moved its headquarters to another state.

Appellant complains that he is "prejudiced" because the record does not reflect his counsel's statement to the trial court that the State never released the DNA evidence to the defense for testing. The record, however, clearly reflects that the DNA evidence *was* provided to the defense for testing, but that such testing did not occur. We are unpersuaded that the record is incomplete or inaccurate, and we overrule appellant's fifth issue.

### III. Conclusion

We affirm the trial court's judgment.

LINDA REYNA YAÑEZ,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Delivered and filed the
4th day of November, 2010.